IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TITUS LINTON, #K-62396,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 16-cv-00492-NJR |
| | ) |
| **KIMBERLY BUTLER,** | ) |
| **RICHARD HARRINGTON,** | ) |
| **JACQUELINE LASHBROOK,** | ) |
| **AARON BROOKS, and** | ) |
| **ANGELA CRAIN,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Titus Linton, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 11). The complaint before the Court is an amended complaint, filed after this Court directed Linton to narrow his claims in accordance with Federal Rule of Civil Procedure 20, or to divide his claims into distinct actions. Plaintiff Linton complied with that directive, narrowing the scope of the present complaint to focus solely on his allegations that Defendants have acted in deliberate indifference to his serious medical needs by failing to provide appropriate accommodations for his physical limitations. He also argues that his claims are cognizable under the Americans with Disabilities Act ("ADA"). As a result of Defendants' deliberate behaviors, his medical condition has prevented him from moving about the prison to accommodations like chow, the law library, or the yard. In connection with these narrow claims, Linton names Kimberly Butler (warden), Richard Harrington (former warden), Jacqueline Lashbrook (assistant warden), Aaron Brooks (assistant warden), and Angela Crain (health care

counselor or administrator). Linton seeks injunctive relief, an institutional transfer, and monetary compensation.

The case is now before the Court for a preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## **The Complaint**

According to the complaint, Linton has struggled to secure proper accommodations for his various physical disabilities since the day he arrived at Menard in April 2014 (Doc. 1 at 5). Upon arrival at Menard, Linton reports that his cane was confiscated because it was an alleged security threat and was not permitted at that institution (*Id.*). In addition to losing his walking device, Linton's old medical permits were ignored in so much as he was housed at a high gallery where he had no access to amenities such as chow lines, yard, law library, school, the barbershop, or commissary (*Id.* at 5, 9). Linton immediately commenced the grievance process to address his needs (*Id.* at 5). He appended grievances to his complaint which were dated April 10, 2014; April 17, 2014; April 22, 2014; and August 7, 2015 (Doc. 11-1 at 1-16). According to Linton, Warden Harrington (the recipient of his first grievance) deemed the matter an emergency and forwarded it to the grievance unit for handling (Doc. 11 at 5-6). Linton appended a grievance officer report dated April 14, 2014, which reflected the actions taken in response to his first grievance—the response noted that the healthcare unit had prescribed his medications for six

months, that he had been seen by the nurse practitioner, and that he had been referred to Dr. Trost for further attention (*Id.* at 13).

Linton claims that the grievance unit subsequently forwarded his request to the medical unit—specifically, nursing supervisor Angela Crain. He alleges that, rather than responding to his needs, Crain somehow falsified her response, thus subjecting him to physical pain and an improper housing assignment (*Id.* at 6). Linton followed-up with another grievance on April 22, 2014 (*Id.*). The next day a grievance officer responded that Linton's needs were being met, but that should he have further issues, he should address them to the administrative review board.

Around the same time, on April 17, 2014, Linton submitted a grievance to Warden Butler, concerning his ADA issues (*Id.* at 7). Butler declined to deem the grievance an emergency and redirected Linton to the "normal" grievance process (*Id.*). He then submitted a grievance to his grievance counselor, who responded that Crain had scheduled him to see Dr. Trost (*Id.*). Linton also submitted his ADA grievances to coordinator Lashbrook, but he did not receive an immediate response (*Id.*). In light of the non-response, he also submitted his ADA concerns to the Attorney General's Office (*Id.*). The Attorney General's Office did respond, but they also directed him to address his concerns via internal procedures or to seek outside counsel (*Id.*).

On May 16, 2014, Linton states that he finally saw Dr. Trost for his medical needs (*Id.* at 6). Dr. Trost apparently directed that he be housed in a low gallery, shower in the low gallery, have a bottom bunk, not ascend or descend stairs, and not participate in recreation (*Id.*). Despite these directions, Linton alleges that for some unspecified period of time Defendants Butler, Lashbrook, and Brooks exhibited deliberate indifference to his medical needs by maintaining his housing assignment on an upper gallery (*Id.* at 7-8).

On June 24, 2014, Lashbrook responded to Linton's ADA letter informing him that she forwarded his letter to appropriate officials (*Id.* at 8). Subsequently, a grievance officer contacted Linton on June 30, 2014, and stated that Crain told her that Dr. Trost said Linton's present needs did not necessitate a walking device (*Id.*). Linton alleges that Crain lied, because Crain and Dr. Trost never spoke (*Id.*). In support of this allegation, Linton says Dr. Trost authorized a wheelchair for him—something that he alleges contradicts Crain's statement (*Id.*).

In September 2014, Lashbrook apparently responded to Linton and informed him that he would get a different housing accommodation (*Id.*). Linton was eventually housed in a regular segregation cell which, unlike ADA cells, was not necessarily designed for an inmate with a wheelchair (*Id.* at 8-9).

Linton claims that even with Trost's wheelchair authorization, he did not receive a chair until May 2015 (*Id.* at 8). He further claims that each named warden was aware of the delay (*Id.*).

Aside from Harrington, Linton alleges that all of the named wardens told him Menard was not equipped to meet his ADA needs (*Id.* at 9). He was apparently told that because of this he would ultimately get a transfer (*Id.*). Instead, in May 2015, Butler, Lashbrook, and Brooks had Linton housed in an administrative detention unit that was ADA accessible (*Id.*). On August 2, 2015, Linton filed a lengthy grievance detailing his many outstanding needs (*Id.*). He alleges that Butler deemed it a non-emergency (*Id.*). Finally, in September 2015, Linton was notified that his grievance was not in the proper format (*Id.* at 10). At that point, Linton ceased his efforts to grieve his needs (*Id.*).

Linton generally alleges that, during the entire timeframe of his complaint, all named wardens were aware of his needs (*Id.* at 5-10). As a result of their inaction, he suffered no yard or

recreation time, no chow lines, no law library, no school, no barbershop, no commissary, no religious services, and no prison employment for the entire two years (*Id.* at 9).

## Discussion

Based on the allegations, the Court finds it convenient to adopt the enumeration of counts set forth below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:** Eighth Amendment deliberate indifference claim against Harrington for his failure to adequately address Linton's original grievance in April 2014;

**Count 2:** Eighth Amendment deliberate indifference claim against Butler for her failure to adequately address Linton's ongoing grievances regarding his medical needs;

**Count 3:** Eighth Amendment deliberate indifference claim against Lashbrook for her failure to adequately and timely address Linton's medical needs;

**Count 4:** Eighth Amendment deliberate indifference claim against Brooks for his failure to adequately address Linton's medical grievances; and

**Count 5**: Eighth Amendment deliberate indifference claim against Crain for her failure to treat Linton's medical needs by falsify statements about his care and by failing to provide sufficient care commensurate to his actual needs.

As a preliminary matter, Linton also mentioned the ADA a number of times in the body of his complaint. Each time he mentioned the ADA, he either mentioned it in the generic sense, or mentioned it in connection with specific defendants. The Seventh Circuit has held that individual employees of the IDOC are not amenable to suit under the ADA. *Jaros v. Illinois Dept. of Corrections,* 684 F.3d 667, (7th Cir. 2012). Accordingly, Linton's ADA related allegations are dismissed with prejudice as to all named defendants for failure to identify a valid

legal theory.

Turning to Linton's other substantive allegations, many of the deliberate indifference claims invoke the same legal principles, so this section of the memorandum will open with an overview of the applicable legal framework. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James*, 956 F.2d at 699. Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* Whether an injury is serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.*

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*,

111 F.3d at 1369. Additionally, a reasonable response differs depending on the capacity of the alleged wrongdoer. A non-medical prison employee—one who for example handles grievances, or supervises prison operations—will generally not be liable for deliberate indifference if he or she believes the prisoner is receiving adequate medical care, or takes steps to verify that the inmate is receiving care. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005). Individual liability may arise on behalf of a non-medical defendant, however, if the defendant is made aware of a specific constitutional violation via correspondence from the inmate and the individual declines to take any action to address the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Simply put, a prison official may not escape liability by turning a blind eye to serious harms. *Id.* at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye' to it").

In a case where an inmate claims a delay in treatment as opposed to a total denial, the plaintiff must offer some evidence that the delay caused lasting harm. *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (finding that a plaintiff may be able to prove to a jury that delay constituted deliberate indifference where the treating doctor testified that the bones in the hand would begin fusing quickly after an injury, and thus permanent damage may occur quickly). There is no bright line standard for how much of a delay is too much. There is also no bright line standard for how much care must be provided to avoid liability for deliberate indifference. A doctor or prison official is not required to follow every recommended course of care with precision, but ignoring recommendations of an outside provider may constitute deliberate indifference if doing so would result in the provision of such inadequate care that no reasonable medical official would agree with the course of action taken. *See Perez*, 792 F.3d at 778-79

(collecting cases) ("allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference"); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"). Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See id*. at 1073-74. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* at 1073.

The doctrine of *respondeat superior* does not apply to section 1983 claims; thus, a defendant must be personally liable for the deprivation of a constitutional right. A defendant will be deemed to have sufficient personal responsibility if "he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, a supervisor may be liable for deliberate, reckless indifference to the misconduct of subordinates if it can be shown that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it for fear of what they might see. *See id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

It is also worth mentioning that, aside from traditional deliberate indifference, courts have discussed challenges disabled prisoners may face in participating in daily life in prison. In *Jaros v. Illinois Dept. of Corrections,* 684 F.3d at 670-71, the Seventh Circuit recently engaged in such a discussion regarding a prisoner with medical ailments that manifested in ways very similar to

Linton's. Jaros had difficulty walking, standing, or otherwise moving about the prison without a cane, and to do so caused him chronic pain. *Id.* As a result of his disabilities and the lack of proper accommodations, such as hand rails for his shower, Jaros alleged that he only got to shower about four times a month and occasionally missed breakfast because he could not walk there quickly enough. *Id.* In considering these issues, the Seventh Circuit affirmed the district court's finding that Jaros failed to state a claim under the Eighth Amendment because he was not completely precluded from civilized measures of life and he did not allege excessive lasting harm as a result of any deprivations. *Id.* As to the shower issue, the court noted that he still got to shower sometimes, and as to the food issue, the court noted that he did not allege any lasting harm from missing some meals. *Id.* Thus, the *Jaros* Court concluded that he did not state a claim under the Eighth Amendment. *Id.*

Objectively, Linton has identified a medical need serious enough to pass threshold review. Linton's various conditions that make him unable to walk or otherwise move about the institution without great pain obviously constitute a chronic and persistent condition. The subjective component of the deliberate indifference analysis will be conducted in turn with respect to each individual defendant and his or her role in the institution.

*Count 1*

As to Harrington, he is a supervisor in the facility, but *respondeat superior* liability does not exist under section 1983, so any claim against him must be based upon his personal actions. Linton does allege that Harrington was aware of his medical needs, but he also indicated that when Harrington became aware of his needs, Harrington took action by forwarding his grievance to the grievance office. From there, the grievance was apparently directed to the medical unit. Linton makes no allegation that he later informed Harrington that he was not receiving sufficient

care. As such, Linton's allegations against Harrington are insufficient to establish the sort of knowing and intentional conduct required to support a proper claim for deliberate indifference. *See Sanville*, 266 F.3d at 740. Accordingly, Linton's allegations against Harrington are dismissed without prejudice.

*Counts 2-3*

Linton's allegations against Butler and Lashbrook are similarly insufficient. Though he alleges that on multiple occasions he directed grievances to these individuals, he also alleges that at various times they took action by responding to his grievances or by otherwise adjusting his status at the facility. For example, he alleges that at one point Lashbrook told him that he would be moved to an appropriate cell, and he also alleges that he was eventually moved to an administrative segregation cell that could accommodate a wheelchair-bound ADA inmate. While it is unfortunate that the move might have taken longer than he wished, Linton's allegations simply do not illustrate a discrete timeframe or course of action within which Butler or Lashbrook completely ignored his needs. As supervisors, they cannot be liable in their supervisory capacity for directing others with regards to these matters. On an individual level, Linton has not established that they willfully turned a blind eye to blatant violations of his rights. Thus, counts 2 and 3 are dismissed against Defendants Butler and Lashbrook, respectively.

To the extent that Linton intended to assert a claim against Butler or Lashbrook for denying him the minimum civilized measures of life, he has failed to do so because he does not allege that he was rendered completely incapable of going about his daily life, or that he suffered severe and lasting harm as a result of the delays or inconveniences to his daily activities. Following the *Jaros* rationale, the inconveniences are not sufficient to state a claim because Linton was still able to shower and eat. As to some of his other complaints, such as his inability

to attend yard—this complaint lacks legitimacy because the grievance responses appended to his complaint specifically state that medical officials directed him *not* to participate in yard. Finally, as to the other inconveniences he identified, such as inability to attend religious services, school, or the barbershop, there is no indication that he made Butler or Lashbrook aware of these issues because none of his grievances specifically targets these issues, so Butler and Lashbrook cannot be said to have actively deprived him of these accommodations.

*Count 4*

Turning to Defendant Brooks, Linton makes no allegations about how or when Brooks became aware of his medical needs. Again, Brooks is a supervisor and cannot be held liable under a theory of *respondeat superior*. Given the lack of information about Brooks's awareness of Linton's needs, and the lack of any allegation that Brooks took specific actions in violation of Linton's rights, the complaint does not state a sufficient claim against Brooks. Thus, Count 4 against Brooks will be dismissed without prejudice.

*Count 5*

Finally, Linton made a number of allegations about Defendant Crane's actions surrounding his medical and disability based needs. Although Linton identifies Crane as a supervisor, he also seems to allege that she provided him with some direct care. Thus, unlike the other supervisory defendants, Linton has made sufficient allegations against Crane that she personally took action regarding his medical needs. Linton's basic allegations suggest that Crane was aware of his serious medical conditions that caused him difficulty moving about the institution, and yet she either completely deprived him of needed accommodations (like a cane or wheelchair) or she at least delayed the provision of these items. While the record also suggests that she was perhaps under the impression from Dr. Trost that those accommodations were not

immediately necessary, the record is not so clear on this point that it completely defeats Linton's claim. Accordingly, Linton will be allowed to proceed with Count 5 against Crane for development of a more comprehensive factual record.

### Disposition

IT IS ORDERED that COUNTS 1-4 are DISMISSED without prejudice against Defendants HARRINGTON, BUTLER, LASHBROOK, and BROOKS for failure to state a claim upon which relief may be granted. To the extent that the complaint makes claims under the ADA, these claims are DISMISSED with prejudice as to ALL DEFENDANTS.

IT IS ORDERED that COUNT 5 shall receive further review against DEFENDANT CRANE. With respect to COUNT 5, the Clerk of Court shall prepare for DEFENDANT CRANE: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is DIRECTED to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant Crane cannot be found at the work address provided by Linton, the employer shall furnish the Clerk with her current work address, or, if not known, her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Linton shall serve upon Defendant Crain (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Linton shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or her counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant Crain is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Linton, and the judgment includes the payment of costs under § 1915, Linton will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Linton is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Linton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** October 21, 2016

*[Signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**