IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TITUS LINTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-cv-492-NJR-DGW |
| | ) |
| ANGELA CRAIN, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Angela Crain on March 2, 2017 (Doc. 19) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

On June 22, 2016, Plaintiff, Titus Linton, filed an amended complaint pursuant to 42 U.S.C. § 1983 related to his incarceration at the Menard Correctional Center. Plaintiff alleged that various personnel at Menard were deliberately indifferent to his health, in violation of the Eighth Amendment to the United States Constitution, by failing to provide proper accommodations for his physical limitations. Plaintiff claims that he has physical disabilities

that require a walking device (a cane) that was confiscated upon his entry at Menard in April 2014.  In addition, Plaintiff's medical permits were not honored, preventing access to the food line, the yard, the law library, schools, the barbershop, and/or the commissary for a period of 2 years.  On October 21, 2016, the District Court found that Plaintiff identified a serious medical need, his disability that made him unable to walk or move about the institution without significant pain, but that he only stated a claim as to Defendant Angela Crain, the nursing supervisor (Doc. 12).  Thus, Plaintiff is proceeding on one count (labeled Count 5) alleging an:

> Eighth Amendment deliberate indifference claim against Crain for her failure to treat Linton's medical needs by falsify [sic] statements about his care and by failing to provide sufficient care commensurate to his actual needs.

(Doc. 12).

In Defendant's motion for summary judgment, she argues that Plaintiff did not timely submit or exhaust any grievance related to the claim in this suit (Doc. 19).  In response, Plaintiff argues, in part, that he submitted a grievance on July 28, 2015 that addressed his claims against Defendant (numbered "120-7-15") (Doc. 23).

On April 25, 2017, a hearing was held pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) on Defendant's motion.  Almost immediately after the hearing began, Plaintiff, who appeared by video-conference, began having a health issue.  The hearing was adjourned and reset for June 22, 2017.  At that hearing, Plaintiff again appeared by video-conference and Defendant appeared by counsel.

# FINDINGS OF FACT

Plaintiff's claim that Defendant Crain lied about his medical status appears, at first blush, to stem from her response to an April 17, 2014 grievance (Doc. 23, p. 48). In this written response, dated June 13, 2014,[1] Defendant Crain stated that:

> I have reviewed your grievance and reviewed the medical record and offer the following. I find that you have previously used a single crutch at the previous institution. I have scheduled you to see the physician for assessment of gait and questionable continued need for a crutch (*Id*).

Upon receiving this memo along with his counselor's response, Plaintiff submitted his grievance to the grievance officer. When the grievance officer responded on August 29, 2014, she stated:

> Per HCU: He has been provided permits for slow walk, low bunk, low gallery, shower on gallery, double cuff, feed in cell, no yard. These permits were provided following his concern in June 2014 of not being able to have a crutch or cane like he had in other institutions. Menard does not allow crutches or canes in the cell's [sic] and generally not in the cell house. I am going to go over and see this guy today and talk with staff just to see exactly what it is he is unable to do. I spoke with Dr. Trost and he does not feel like this inmate would fall under the ADA Standards because although his gait is slow and steady he is still able to ambulate. Dr. Trost did comment that as his disease process progresses he would probably benefit from a cane or crutch but does not feel that he is currently at that point (*Id*. 45).

Plaintiff believes that these responses were false because he was told the opposite by Dr. Trost (Doc. 11, p. 6).[2] He also alleges that he never was seen by Defendant Crain and his gait never was assessed (*Id*. 7). These false responses by Crain resulted in Plaintiff not receiving accommodations for his medical condition.

There are no grievances in the record, nor did Plaintiff testify as to any grievances, that

---

[1] It appears that Plaintiff's counselor forwarded the grievance to Angela Crain who then wrote the June 13, 2014 memo regarding the claim.

[2] It is unclear from Plaintiff's Complaint and his testimony at the hearing what Dr. Trost told him and when. However, he may have spoken to Dr. Trost at a time contemporaneous to the statements made by Defendant Crain.

complained about these particular false statements. While the record does contain many grievances, some of which are lengthy and confusing, there are no grievances in which Plaintiff specifically complained that Angela Crain had lied about his medical status in June and August 2014, thereby preventing him from acquiring accommodations or medical care for his medical condition.

However, Plaintiff's grievances submitted on April 10, 2014 and April 22, 2014 are relevant to his claim that Angela Crain thwarted his efforts to acquire medical care by, in part, misrepresenting the care he was receiving.

Plaintiff's grievance writing began with an April 10, 2014 emergency grievance in which he outlined his medical conditions and medical history (Doc. 23, pp. 41-44). He stated that since being transferred to Menard, he was deprived of his medication and assistive devices by unnamed medical staff and nurses (primarily on his gallery). He goes on to state: "For all the nurses/med-techs that are assigned to the North 2 cellhouse 7 gallery, and whomever else that they had called in the healthcare unit who denied me both my medications and to be seen by the doctor they have exhibited deliberate indifference" (*Id*. 43). Plaintiff argues that the "whomever else" he is referring to is in fact Angela Crain, although he did not know her name at the time. The grievance was deemed an emergency and Plaintiff received a response from the grievance officer (on April 15, 2014) to which the Warden concurred on April 17, 2014 (*Id*. 40). The grievance officer stated that the grievance was forwarded to the "Health Care Unit" (HCU) which indicated that he had a 6 month supply of medication, that he would see Dr. Nwaobasi, and that he would receive his medical permits. The grievance officer deemed the matter moot because of the "on-going medical evaluation and treatment." Plaintiff signed the bottom of the grievance indicating that he intended to appeal the grievance to the Administrative Review

Board (ARB) (*Id*.). The ARB has no record of receiving this appeal (Doc. 20-1, p. 3). In his response, to which he attaches an affidavit verifying its contents (Doc. 23, p. 52), Plaintiff refutes this statement by indicating that he submitted this grievance to the ARB[3] (*Id*. 4).

While the April 10 grievance was pending, Plaintiff submitted the April 17, 2014 emergency grievance (Doc. 23, pp. 46-47) which garnered the statements from Defendant Crain set forth above. Again, Plaintiff avers that he submitted this grievance to the ARB also[4] (*Id*. 4). Shortly after receiving the response from the Warden to the April 10, 2014 grievance, Plaintiff then submitted an April 22, 2014 emergency grievance (Doc. 32, pp. 20-21). In this grievance, Plaintiff states that the HCU "gave . . . intentional false information when stated that I was prescribed all my medications for six months" in response to the April 10 grievance (*Id*. 20). He goes on to state that the "HCU staff has lied concerning this matter as of April 10, 2014" and that he is still without his medications and that his medical appointments were cancelled by HCU (*Id*.). In response to this grievance, D. Dwight, of the "grievance office," inexplicably indicated: "Forward grievance direct to the [ARB] (protective custody, enforced medication, <u>disciplinary reports from other facilities,</u> decisions rendered by the Director, etc." (emphasis in original) (Doc. 11-1, p. 5). He further stated, "Issue has been previously addressed on grievance #36-4-

---

[3] To be fair, in framing Plaintiff's claim at the hearing, the Court emphasized the allegation that Crain lied and thereby caused the lack of medical attention. The Court did not emphasize the second part of Plaintiff's claim, that she failed "to provide sufficient care commensurate to his actual needs." Indeed, when Plaintiff raised the April 10, 2014 grievance at the hearing, the Court indicated that this grievance was not pertinent to Plaintiff's claim. That determination was in error.

[4] The Warden initially indicated that the grievance was not an emergency on April 24, 2014. Plaintiff's counselor received the grievance on May 12, 2014 but did not respond until after June 13, 2014. The grievance officer received the grievance on June 30, 2014 and the Warden made the final decision on September 8, 2014. Plaintiff signed the appeal section on December 11, 2014.

14. No justification for further consideration" (*Id.*).[5]

At the hearing, Plaintiff appeared credible and forthright in his contention that he attempted to grieve the claims that are before the Court.

### CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

---

[5] "36-4-14" refers to the April 10, 2014 grievance.

Page **6** of **10**

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, §

504.810(a).[6] If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15

---

[6] The Code as amended on April 1, 2017.

(citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

This Court finds that the April 10, 2014 grievance exhausted Plaintiff's claim that Defendant Crain was deliberately indifferent to his health needs. While Plaintiff did not name Defendant Crain, he testified that he did not know her name and identified her as the person in the HCU who the other nurses "called" regarding his health care. It could have been no mystery to any person at the prison, including grievance officers, who "HCU" referred to – these officers themselves referred to Crain as the "HCU" in their responses to Plaintiff. That is, she is the very person they would contact to acquire information about Plaintiff's care and routinely do not refer to her by name but rather by the moniker HCU. Therefore, the fact that Plaintiff did not specifically name Crain is not dispositive. This grievance sufficiently notified the prison of Plaintiff's complaints. The Court further finds that Plaintiff fully exhausted this grievance even though the ARB has no record of his appeal. Plaintiff timely signed the appeals section of the grievance and appeared sincere in his arguments and during testimony that he attempted to get the grievance before the correct individuals for consideration. This Court credits his written statement that he sent this grievance to the ARB but received no response, thereby rendering the process unavailable.

This Court further finds that the April 22, 2014 grievance exhausted his claim that Crain made false statements and thereby prevented the receipt of medical care. By failing to address the grievance on the merits, the prison caused remedies to be unavailable. Plaintiff was required to do nothing more to exhaust his administrative remedies.

In light of these findings and conclusions, it is unnecessary to address whether the April

17, 2014 grievance or the grievances filed in 2015 are relevant to the issue of exhaustion of administrative remedies. Plaintiff was not required to file multiple grievances about the same ongoing issue. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Angela Crain on March 2, 2017 (Doc. 19) be **DENIED** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 6, 2017**

**DONALD G. WILKERSON**
**United States Magistrate Judge**